UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  1:24-cv-22859


SORAYA GHODRATI,

     Plaintiff,

v.

ZEISLER PLLC, Foreign Limited Liability Company,
and STEVEN R. FRANKEL,

     Defendants.

_____ /

## PLAINTIFF'S COMPLAINT
## AND JURY DEMAND

    Plaintiff,  SORAYA GHODRATI, (hereinafter "Plaintiff"), by and through undersigned

counsel, sues the Defendants, ZEISLER PLLC, a Foreign Limited Liability Company, and STEVEN

R. FRANKEL, (hereinafter "Defendants"), and alleges:

### INTRODUCTION, PARTIES, JURISDICTION AND VENUE

1.    This is an action for misrepresentation and violation of FDUTPA in relations to the

     soliciting/offering and sale of a property located in Miami-Dade County, Florida.

2.    Plaintiff, SORAYA GHODRATI, is an individual and citizen/resident of the State of Florida.

3.    Defendant, ZEISLER PLLC (Hereinafter "ZEISLER"), is a limited liability company

     incorporated in New York, its principal place of business located at 45 Rockefeller PLZ, FL

     20, New York, NY 10111, and with its member being a citizen of the State of New York.

4.    Co-Defendant, STEVEN R. FRANKEL (Hereinafter "FRANKEL"), is an individual and a

citizen/resident of the State of New York.

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is a complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     The Court has personal jurisdiction over the Defendants given that aside from the Defendants availing themselves of the privileges of the State of Florida including conducting activities and having contacts within Florida, and ZEISLER operating, conducting, engaging in, or carrying on a business and/or maintaining an office/agency in this State, Defendant(s) engaged in the commission of tortious acts within the State, and/or engaged in substantial and not isolated activity within this state, with the resulting harm occurring in this State and Judicial District.

7.     Pursuant to 28 U.S.C. Section 1391, venue properly lies in this Judicial District because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District and/or a substantial part of the property that is the subject of the action is situated in this judicial District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

8.     At all times material hereto, FRANKEL was an attorney licensed in the State of New York, with ZEISLER a law-firm which employed and had the right of control over FRANKEL.

9.     At all times material hereto, Defendant FRANKEL was a partner/managing agent in the law-firm of and an agent, employee, and/or officer of Defendant, ZEISLER, and acting within the course/scope of his agency/employment relationship with ZEISLER and to further a purpose or interest of ZEISLER, and/or ZEISLER knowingly having permitted, ratified,

approved, or condoned FRANKEL's conduct described herein.

10. Especially as a lawyer/law firm, Defendants were expected to conduct themselves with utmost honesty, integrity, good faith and ethical practices.

11. On or about November 1, 2016, on behalf of an entity called Auld Realty Corp. (Hereinafter "AULD"), the Defendants, through FRANKEL, facilitated the purchase of a condominium property located in Miami-Dade County, Florida at 8950 SW. 74th Ct, Unit 101, Miami, Florida 33156 (hereinafter the "Unit"). (Please See Exhibit "1")

12. The Defendants, through FRANKEL, were even personally/intimately involved in the handling of the real estate transaction on behalf of AULD that procured the purchase of the Unit, and thus had full knowledge of the existence or lack thereof of any assignment of rights to any parking spaces accompanying the purchase of the Unit.

13. At all times material hereto, AULD apparently had no officers or offices physically here in the United States, with the sole U.S. based corporate officer purportedly being FRANKEL.

14. All addresses and information regarding AULD was c/o FRANKEL via ZEISLER; to be sure, at all relevant times, even AULD's principal place of business was represented to be: "C/O STEVEN R. FRANKEL, ESQ., ZEISLER PLLC   45 ROCKEFELLER PLAZA, 20TH FLOOR, NEW YORK,  NY  10111"

15. Sometimes in 2022, the Defendants, through FRANKEL, were involved/engaged in the advertising, soliciting, providing, and/or offering for sale (and its eventual sale) of the Unit here in Florida.

16. Plaintiff learned of Defendants' efforts to sell the Unit and engaged in negotiations for its purchase.

17.     As part of the negotiations and to induce the Plaintiff to enter into a purchase agreement and also agree to take over a lease agreement which AULD had with a tenant in the Unit, Defendants, through FRANKEL, promised/represented that AULD would convey several parking spaces (consisting of both assigned and unassigned parking spots) as part of the sale of the Unit.

18.     The number of parking spaces was material and very important to the Plaintiff both given their significant value to the Unit and their individual value in a condominium building, and the fact that the lease agreement which FRANKEL wanted and was inducing the Plaintiff to take over specifically referenced the landlord providing the tenant with certain number of parking spaces; accordingly, it was highly important both so as to purchase of the Unit and for the taking over the lease agreement that at least those referenced number of parking spaces be conveyed/assigned to the Plaintiff as part of the transaction.

19.     In reliance upon FRANKEL's promises/representations, on or about July 1, 2020, the Plaintiff was in fact induced to enter into a real estate transaction for the purchase of the Unit pursuant a written purchase contract ("Contract").  (See Exhibit "2")

20.     FRANKEL was also directly involved in execution of the Contract, with FRANKEL signing the document purportedly as the authorized corporate secretary of AULD.

21.     Consistent with FRANKEL's promises/representations, the Contract specifically stated that it "includes conveyance/assignment" of the referenced number of parking spaces. (See Contract @ 7, under "ADDITIONAL TERMS:")

22.     In addition to the promises and terms of the Contract, so as to further induce the Plaintiff, especially to agree to take over/ be assigned the outstanding lease agreement and its

4

obligations thereunder (which, as noted above, referenced and required providing the tenant with certain number of parking spaces), on August 15, 2022, FRANKEL (again purportedly as AULD's corporate officer) also executed and submitted an Estoppel Certificate (See Exhibit "3") to the Plaintiff in which he specifically verified, confirmed and represented that there were at least six parking spaces:

> "H.    Number and location of parking spaces: 2 assigned, 665 &
>        666, plus 4 unassigned"

23.    On September 29, 2022, in reliance upon FRANKEL'S various promises/representations (including holding himself out as the authorized corporate officer of AULD), the Plaintiff moved forward with the closing of the transaction and the Unit was deeded/conveyed to the Plaintiff  (See Exhibit "4"); with Plaintiff also agreeing to have AULD also separately assigned to her the rights and obligations under the lease  (deemed incorporated/attached hereto) to the Plaintiff wherein it both represented, inter alia, that it possessed the requisite legal authority to assign its interests in the lease but also agreeing to indemnify the Plaintiff against any losses, damages, costs/fees, harm or expenses suffered or incurred by the Plaintiff arising from, as a result of or due to or relating in any manner to any breach of the representations or warranties.

24.    As with the other documents (including the lease assignment), the Warranty Deed was also executed by FRANKEL (purportedly the duly authorized corporate officer of AULD) and identified the grantor's address as: "C/O Steven R. Frankel, Esq., 45 Rockefeller Plaza, 20th Floor, New York, NY 10111."

25.    It is Plaintiff's understanding that the substantial funds (of nearly one million dollars) that she paid in relation to the Unit, were all sent to and received by Defendants, through

FRANKEL.

26.    Despite the promises/representations made by FRANKEL to the Plaintiff which induced her to purchase the Unit at the referenced price and take over the lease, sometimes thereafter the Plaintiff was informed by the tenant that it did not have access to all of the referenced parking spaces (as required by the assigned lease agreement) and as a result of same, the tenant began deducting substantial amount of monthly rent payments under the lease from the Plaintiff.

27.    Upon learning of the matter, Defendants, through FRANKEL, were contacted to explain the matter and given an opportunity to cure the breach and asked to provide documents to the Plaintiff as to the right to use for any and all parking spaces allotted to the Unit.

28.    On September 15, 2023, FRANKEL, again holding himself out as the corporate secretary of AULD, executed and submitted an Assignment of Rights to Use Parking Spaces. (See Exhibit "5").

29.    FRANKEL, however, knew that AULD had never in fact received any documents from the prior owner conveying any right, title and interest to such parking spaces (now, a total of 9 parking spaces) and merely signed and executed same to feign cooperation and/or continue to engage in more unfair, deceptive and/or misleading acts or practices.

30.    To be sure, the Assignment submitted by Defendants, through FRANKEL, was rejected by the condominium association's representative (particularly without supporting documents from FRANKEL– who clearly knew that AULD had no such documents).

31.    Accordingly, the Plaintiff continued to suffer losses/damages and be without the promised total number of parking spaces (much-less the 9 parking spaces conveyed by FRANKEL in

6

the September 15, 2023 Assignment) given that, despite representations and warranty to the contrary, AULD did not possess the requisite legal authority to assign interests to all of the various parking spaces in the lease to the Plaintiff.

32.     When asked for any document or proof to reflect that Defendants, through FRANKEL, had a good faith and honest basis to have represented/warranted to Plaintiff that AULD had the legal right/interest to convey at least the six (much-less nine) parking spaces to the Plaintiff, Defendants failed to cooperate and provide any proof– thereby confirming that all of the promises and assurances were merely empty words and a clever ploy/ruse/subterfuge by Defendants to lull the Plaintiff to purchase the Unit and take over the lease from AULD.

33.     Despite continuously reaching out to FRANKEL about the matter (and reminding him of the ongoing harm and losses to the Plaintiff), Defendants acted with reckless indifference to Plaintiff's plight/losses and conveniently ignored the issue– especially given that FRANKEL had already successfully duped/mislead the Plaintiff into purchasing the Unit and taking over the lease.

34.     Notwithstanding several more months having passed, FRANKEL failed to honor the promises/representations made to the Plaintiff and cure/address the false and misleading promises/representations.

35.     To cause additional prejudice and harm to the Plaintiff and avoid accountability, FRANKEL then engaged in further unscrupulous, unethical, unfair practices or deceptive acts.

36.     As part of the fraudulent/dishonest scheme by Defendants to knowingly further aid and abet AULD in the commission of the deceit/misrepresentations/concealments beyond having already provided substantial assistance to AULD through executing the Contract and even

submitting a misleading Estoppel Certificate, the Defendants, through FRANKEL, finally

sent an email regarding the matter on April 29, 2024.

37.     Despite the Plaintiff having provided multiple opportunities and courteously waiting (since

2023) for FRANKEL to cure the breach, on April 29, 2024, Defendants, through FRANKEL,

remarkably sent the Plaintiff the following email advising:

> "Monday, April 29, 2024 at 10:50:58 AM EDT, Steve Frankel
> <steve@zeisler-law.com> wrote:
> Sorry for the delay in responding to you.  I have ben traveling and did not
> always have internet service.
> I am unable to respond any further since neither I [n]or my firm represent
> Auld Realty any further and I do not have any new contact information."

(See Exhibit "6")

38.     This email and the representations therein were distressing, insincere and in bad faith given

that Defendants, through FRANKEL, had not only repeatedly represented that he was the

authorized corporate representative of AULD (and not just merely its lawyer), which were

part of the inducement, but FRANKEL himself had in fact executed each and every one of

the documents conveying the Unit, parking spaces and even the lease assignment/agreement

to the Plaintiff.

39.     Accordingly, if the representations by FRANKEL were true and correct (and not in any way

false or misleading so as to induce the Plaintiff to enter into the sale and lease transactions

with AULD, or thereafter a bad faith/unconscionable/an unscrupulous conduct and attempt

to deny Plaintiff any recourse), then FRANKEL himself (as the authorized corporate officer)

had the ability/authority to address the matter regardless of whether he allegedly lacked any

new contact information for AULD and regardless if the Defendants allegedly no longer

represented AULD as a lawyer/law-firm.

8

40.     Thus, FRANKEL's representation to the Plaintiff at the outset that he was a corporate officer of AULD and fully authorized to act on its behalf were false, fraudulent, insincere, in bad faith, deceptive and/or misleading, and/or his April 29th, 2024 email an unconscionable, bad faith, unethical and unscrupulous act and attempts to wash Defendants' unclean hands of the matter (and attempt to leave the unfortunate Plaintiff out in the cold without any recourse).

41.     Moreover, if one were to believe Defendants' own April 29, 2024 email, then there was unfair, deceptive or unconscionable acts or practices in initially having induced the Plaintiff to believe that FRANKEL was a corporate officer of AULD with the ability/authority to address and cure matters in relations to the Contract/Unit.

42.     Following receipt of FRANKEL'S April 29, 2024 email, an inquiry was made of AULD through the Florida Department of Corporations, which advised that on January 29, 2024 (i.e., months earlier and during the time that the Defendants, through FRANKEL, was stalling and *allegedly* attempting to cure the breach) FRANKEL *himself* had dissolved AULD.   (See Exhibit "7").

43.     Thus, FRANKEL'S April 29, 2024 email not only attempted to mislead the Plaintiff and concealed his own ploy months earlier, but falsely/deceptively implied that all along the Defendants were merely attorneys for AULD (who, conveniently, allegedly could no longer assist in the matter, especially as they no longer allegedly represented AULD and had no further contact information); in sum, the Defendants succeeded in their unfair and dishonest subterfuge in selling the Unit and assigning the lease to the Plaintiff by making certain representations/promises on the one hand (including that FRANKEL was the authorized corporate officer of AULD), but after-the-fact and on the other hand, unfairly and

deceptively attempted to distance themselves from AULD and disclaim corporate connection by insinuating that they were only lawyers.

44. Accordingly, the Defendants, through FRANKEL, not only engaged in unfair, deceptive and/or unconscionable acts or practices, but the conduct engaged in was intentional, fraudulent, willful and wanton, deliberately oppressive, grossly negligent, and/or with reckless or wanton indifference to the rights of the Plaintiff.

45. As ZEISLER's agent, employee, partner and/or officer who was acting within the scope and course of his agency/employment/partnership relationship with ZEISLER, FRANKEL's actions are imputed to ZEISLER (FRANKEL's principal/master/partnership/employer).

46. Accordingly, ZEISLER is vicariously liable (especially as the respondeat superior) for the deceit, unfair or deceptive acts or practices, and misrepresentations of FRANKEL.

47. All conditions to the brining of this action, if any, have occurred or been met, waived, or are excused.

48. The Plaintiff has retained the services of undersigned counsel to prosecute this action and is entitled to recovery of her reasonable attorney's fees.

**COUNT I**

**FRAUD IN THE INDUCEMENT/FRAUDULENT MISREPRESENTATION**

49.     Plaintiff incorporates and reavers herein Paragraphs 1-48 above.

50.     Given that FRANKEL was both an attorney and the individual who was involved in and represented AULD in the acquisition of the Unit, he was fully aware at the time the promise/representations were made to the Plaintiff that AULD did not have any documents which actually and lawfully assigned to AULD the rights to/interest in the represented number of parking spaces, made the representations without knowledge as to either its truth or falsity, or the representations were made under circumstances in which FRANKEL ought to have known, if he did not know, of the falsity thereof.

51.     Similarly, given that FRANKEL was both an attorney and the individual who was involved in and represented AULD in the acquisition of the Unit, he was fully aware at the time the promise/representations were made to the Plaintiff that AULD did not have the legal ability/rights/interest to assign the promised number of parking units to the Plaintiff, made the representation without knowledge as to either its truth or falsity, or the representations were made under circumstances in which FRANKEL ought to have known, if he did not know, of the falsity thereof.

52.     Despite such special knowledge, FRANKEL (a licensed attorney) both falsely promised/misrepresented to the Plaintiff that AULD would convey/assign the promised number of parking spaces as part of the purchase of the Unit (and similar interest as part of the assignment of the lease), and fraudulently mislead Plaintiff regarding the ability to legally convey such parking spaces.

53.     Similarly, given FRANKEL's special knowledge and involvement in the acquisition of the Unit, he made those promises/representations to the Plaintiff without any intention of performing or made with the positive intention not to perform (especially given that he knew that AULD did not possess and had never received any proper/legally valid assignment of rights/interest to the promised number of parking spots as part of AULD's purchase of the Unit).

54.     Accordingly, FRANKEL made false/deceitful promises/statements regarding a specific material fact, with knowledge of its falsity, with intention to induce the Plaintiff to rely upon them, and which in fact induced her to rely upon same and both purchase the Unit and agree to take over the lease.

55.     As a direct and proximate result of the fraudulent representation/deception, the Plaintiff, inter alia, suffered loss/injury/damages including diminution of the value/marketability of the Unit in light of having less assigned parking spaces, value of each parking spot, loss of current and future rent in light of the current tenant deducting monthly rent payments due to purported breach of the lease and negative consequences/marketability/inability of the Plaintiff to rent out or charge the same/comparable rent in the future due to reduced number of parking spaces, attorney's fees incurred by Plaintiff that were made necessary and arose as a result of fraud, and interest on the amount of losses (including unpaid rent).

**COUNT II**

**NEGLIGENT MISREPRESENTATION**

56.     Plaintiff incorporates and reavers herein Paragraphs 1-48 above.

57.     Even if FRANKEL believed as true the promise/representation he made to Plaintiff that AULD could allegedly convey the promised number of parking spaces as part of the purchase of the Unit, those promises/representations were in fact false.

58.     Given that FRANKEL was the individual who was involved in and represented AULD in the acquisition of the Unit, FRANKEL had special knowledge and knew the representations were false or should have known that his representations were false; moreover, if FRANKEL somehow failed to obtain or lacked any parking assignment documents as part of AULD's purchase of the Unit, he made the misrepresentation to the Plaintiff without knowledge of its truth or falsity.

59.     Additionally, given that FRANKEL was an attorney (who would know that one cannot simply convey the rights to something without first possessing documents which actually appropriately conveyed such rights) and was well aware or had knowledge that AULD had never obtained any documents from the prior owner conveying the promised number of parking spaces to AULD, he either failed to take reasonable steps to verify the truthfulness of the representations or should have known that his representations to the Plaintiff were false (and despite his ethical obligations as an attorney, was even dishonest about his knowledge (or lack thereof) about the truth or falsity of his representation despite his superior knowledge of the matter).

60.     Despite same, FRANKEL intended to induce the Plaintiff to rely to her detriment upon his

misrepresentations.

61.    To be sure, the Plaintiff was in fact induced and in justifiable reliance upon FRANKEL's

misrepresentations did enter into the purchase agreement and also did take over the lease.

62.    As a direct and proximate result of FRANKEL's misrepresentation, the Plaintiff suffered,

inter alia, loss/injury/damages including diminution of the value/marketability of the Unit

in light of having less assigned parking spaces, value of each parking spot, loss of current

and future rent in light of the current tenant deducting monthly rent payments due to

purported breach of the lease and negative consequences/marketability/inability of the

Plaintiff to rent out or charge the same/comparable rent in the future due to reduced number

of parking spaces, attorney's fees incurred by Plaintiff that were made necessary and arose

as a result of fraud, and interest on the amount of losses (including unpaid rent).

**COUNT III**

**VIOLATION OF FDUTPA**

63.    Plaintiff incorporates and reavers herein Paragraphs 1-48 above.

64.    Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits any unfair

methods of competition, unconscionable acts or practices, and unfair methods of

competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

conduct of any trade or commerce.  Fla. Stat. §501.204(1).

65.    The stated purpose of this Act, which is to be construed liberally, is to, inter alia, protect the

consuming public and legitimate business enterprises from those who engage in

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or

commerce. Fla. Stat. § 501.202(2).  "Unfair" acts or practices include any act that is

"immoral, unethical, oppressive, unscrupulous or substantially injurious."

66. Aside from providing any aggrieved person with the right to obtain declaratory and injunctive relief, FDUTPA provides that "any person who has suffered losses as a result of a violation may commence a private action to recover actual damages, attorney's fees, and costs." See Fla. Stat. § 501.211 (1) and (2)

67. The Defendants, through FRANKEL, were thus involved in the advertising, soliciting, providing, offering and sale of a property (i.e., the Unit) to the Plaintiff (i.e., a consumer/the purchaser of the property).

68. As part of an unfair, deceptive or unconscionable act or practice, and in addition to the omissions or misleading representation made regarding the promised parking spaces, the Defendants, through FRANKEL, posed as and represented that FRANKEL was a corporate officer of AULD, who allegedly had the lawful right and ability to convey the referenced number of parking spaces in conjunction with the purchase of the Unit (and accompanying lease).

69. In fact, AULD did not possess the legal right/interest to convey the referenced/promised number of parking spaces, with FRANKEL, *when convenient*, being held out by AULD and holding himself out as a legitimate corporate officer with authority to act on its behalf with regards to all matters in relations to the Unit so as to induce the Plaintiff to enter into the purchase agreement/lease assignment.

70. As reflected by FRANKEL'S own April 29, 2024 email,  he,  however, knew that he was not in-fact  a  legitimate/participating  corporate  officer,  but  instead  a  mere  contact point/cover/pretense on paper so as to allow AULD to conduct its affairs here in the U.S.

with impunity with FRANKEL engaging in unfair or deceptive practices so as to mislead/induce the Plaintiff to proceed with the matter with AULD (with FRANKEL having known that AULD had no ties to the United States and that any actual corporate officer was situated in some foreign country and unreachable).

71. Knowing these facts, FRANKEL not only also negotiated and signed the sales Contract (making the misleading representations regarding the conveyance of the promised parking spots) but even the Warranty Deed (and even the interests in the lease and its assignment).

72. FRANKEL's representation to the Plaintiff at the outset that he was a corporate officer of AULD and fully authorized to act on its behalf, wholly false, deceptive and/or misleading representations and unfair conduct, and/or his April 29th, 2024 email was an unconscionable, unethical, unfair and unscrupulous act (aimed to wash Defendants' unclean hands of the matter and ignore Plaintiff's ongoing plight).

73. Moreover, if one were to believe Defendants' own April 29, 2024 email, then there was unfair, deceptive or unconscionable acts or practices in initially having induced the Plaintiff to believe that FRANKEL was a corporate officer of AULD with the ability/authority to address and cure matters in relations to the Contract and lease.

74. Such acts or practices were unfair, unethical, oppressive, unscrupulous, deceptive and unconscionable, and resulted in Plaintiff suffering actual damages/losses (i.e., as far as the Contract- the difference between the market value of the Unit in the condition it was delivered/ conveyed (i.e., a Unit without the promised number of parking spaces) versus the condition it should have been delivered/conveyed to the Plaintiff (i.e., a Unit with the promised number of parking spaces); and as far as the accompanying assignment of the lease

agreement, the difference between the value of the lease that was delivered/conveyed (i.e., the amount of rent actually received in light of the tenant having access to less than the promised/required parking spaces), versus the value of the assigned lease that the Plaintiff should have received  (i.e., the rent amounts that she should have received under the assigned lease based upon the referenced number of parking spaces).

75. As an aggrieved person under FDUTPA, the Plaintiff, respectfully, also prays for a declaratory judgment that the aforementioned acts or practices violated the Act and injunctive relief (including ordering the Defendants to provide the promised number of parking spaces, and issuing a decree imposing a constructive trust/lien in favor of the Plaintiff on any funds maintained on behalf of or for the benefit of AULD in relations to the Unit).

**COUNT IV**

**AIDING AND ABETTING**
***MISREPRESENTATION AND VIOLATION OF FDUTPA***

76. Plaintiff incorporates and reavers herein Paragraphs 1-48 above.

77. The Defendants thus aided and abetted AULD in engaging in unfair practices or deceptive acts, and in fraudulently inducing the Plaintiff to enter into the Contract and assignment of the lease agreement.

78. The Defendants had actual knowledge of the unfair/deceptive acts/practices and of fraud being committed against the Plaintiff by AULD especially in light of FRANKEL's participation/involvement in the purchase of the Unit from the prior owner and accompanying sales/purchase/assignment related documents generated in relations to same.

79. The Defendants rendered substantial assistance in the commission of the unfair practices

17

deception and fraud by, inter alia, both assisting in the making the misleading and false representations and even submitting and signing documents containing false and misleading representations for AULD through Defendants via FRANKEL, to helping conceal the fact that AULD did not actually have the right to or possess any documents which actually conveyed/established that it had received the rights to the promised parking spaces, and otherwise failing to act in good faith and honestly which would have prevented aiding and abetting the violations and fraud.

80.    As a direct and proximate result of the aiding and abetting of the fraud by the Defendants, the Plaintiff suffered loss/injury/damages including diminution of the value/marketability of the Unit in light of having less assigned parking spaces, value of each parking spot, loss of current and future rent in light of the current tenant deducting monthly rent payments due to purported breach of the lease and negative consequences/marketability/inability of the Plaintiff to rent out or charge the same/comparable rent in the future due to reduced number of parking spaces, attorney's fees incurred by Plaintiff that were made necessary and arose as a result of fraud, and interest on the amount of losses (including unpaid rent).

81.    In aiding and abetting the commission of acts or practices which were unfair, unethical, oppressive, unscrupulous, deceptive and unconscionable, same resulted in Plaintiff suffering actual damages/losses  (i.e., as far as the Contract- the difference between the market value of the Unit in the condition it was delivered/ conveyed (i.e., a Unit without the promised number of  parking spaces) versus the condition it should have been delivered/conveyed to the Plaintiff (i.e., a Unit with the promised number of parking spaces); and as far as the accompanying assignment of the lease agreement, the difference between the value of the

lease that was delivered/conveyed (i.e., the amount of rent actually received in light of the tenant having access to less than the promised/required parking spaces), versus the value of the assigned lease that the Plaintiff should have received  (i.e., the rent amounts that she should have received under the assigned lease based upon the referenced number of parking spaces).

WHEREFORE the Plaintiff respectfully prays for damages against Defendants, jointly and severally, for actual, compensatory (both economic and non-economic), and punitive damages, along with interest, appropriate equitable relief, and reasonable attorney's fees and costs.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all counts and on all issues so triable.

By:  /s/ Sina Negahbani
Sina Negahbani, F.B.N. 972673
Negahbanis@yahoo.com
LAW OFFICES OF SINA NEGAHBANI
P.O. Box 566055
Miami, Florida 33256
Tel: (305) 595-9078
Fax: (305) 595-9079
Counsel for Plaintiff

EXHIBIT "1"

CFN: 20160633786 BOOK 30292 PAGE 2780
DATE:11/02/2016  11:49:47 AM
DEED DOC 5,580.00
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

This Document Prepared By:
Adelaida Fernandez-Fraga
Arazoza & Fernandez-Fraga, P.A.
2100 Salzedo Street, Suite 300
Coral Gables, FL 33134

Folio #: 30-5002-098-0010

WARRANTY DEED
(STATUTORY FORM-SECTION 689.02 F.S.)

THIS INDENTURE, made this 1ˢᵗ day of November, 2016, between FERR Real Estate Corporation, a Florida corporation, c/o Arazoza & Fernandez-Fraga, P.A., 2100 Salzedo Street, Suite 300, Coral Gables, Florida  33134, (Grantor) and AULD Realty Corp., a Florida corporation, of c/o Steven R. Frankel, Partner Zeisler PLLC 750 Third Avenue, 9ᵗʰ Floor, New York, New York 10017 (Grantee).

WITNESSETH, That said Grantor, for and in the consideration of the sum of Ten Dollars ($10), and other good and valuable considerations to it in hand paid by said Grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said Grantee, and its heirs and assigns forever, the following described land, situate, lying and being in Miami-Dade County, Florida, to-wit:

**Retail Unit 1, TOWN CENTER ONE CONDO, A CONDOMINIUM, according to the Declaration of Condominium recorded in Official Records Book 26848, Page 3043, and Any and All Amendments Attaching Thereto, All in the Public Records of Miami-Dade County, Florida, Together with an Undivided Interest in and to the Common Elements Appurtenant Thereto.**

SUBJECT TO:

l.      Real Estate Taxes for the year 2016 and subsequent years; zoning, ordinances, restrictions, prohibitions and other requirements imposed by governmental authority; conditions, restrictions, reservations, limitations and easements of record, if any but this reference shall not operate to reimpose same; and restrictions, conditions, covenants, liens terms and limitations set forth in the Declaration of Condominium referenced on the legal description above, all as amended or modified from time to time (the "Declaration") and in the Declaration of Covenants, Restrictions and Easements for Town Center (including all exhibits thereto, the "Master Covenants"), as recorded April 30, 2009 in Official Records Book 26848, at Page 2985, of the Public Records of Miami-Dade County, Florida, as amended and/or supplemented from time to time.

Grantor hereby covenants with Grantee that it is lawfully seized of such land in fee simple, that it has good right and lawful authority to sell and convey such land; and it hereby fully warrants the title to the land, and will defend the same against the lawful claims of all persons whomsoever.

IN WITNESS WHEREOF, Grantor has hereunto set its hand and seal on the day and year first above written.

CFN: 20160633786 BOOK 30292 PAGE 2781

Signed, and delivered
in our presence:

FERR REAL ESTATE CORPORATION, a Florida
Corporation

By:_____
LORENZO MARTELLI, PRESIDENT

Witness Signature

Adelaida Fernandez-Fraga
Printed Name

Corporate Seal

Witness Signature

Sandra B. Gamito
Printed Name

STATE OF FLORIDA            )
COUNTY OF MIAMI-DADE        )

The foregoing instrument was acknowledged before me this _18_ day of _August_ 2016 by
LORENZO MARTELLI, as President of FERR REAL ESTATE CORPORATION, a Florida Corporation,
on behalf of the corporation. He produced _____ as identification or
is personally known to me and executed the foregoing instrument and acknowledged before me
that she executed the same.

WITNESS my hand and official seal at the County of Miami-Dade, this _18_ day of _August_, 2016.

My commission expires:

_____
Notary Public, State of Florida



Notary Public State of Florida
Sandra B Gamito
My Commission FF 078746
Expires 12/22/2017

EXHIBIT "2"

DocuSign Envelope ID: 92ED4049-B76D-4556-AB36-BB2DC0215476

**Commercial Contract**



R E A L T Y   G R O U P   I N C

1.  **1. PARTIES AND PROPERTY:** _____ Soraya Ghodrati _____ ("Buyer")

2.  agrees to buy and _____ AULD REALTY CORP _____ ("Seller")

3.  agrees to sell the property at:

4.  Street Address: 8950 SW 74 CT., #101, Miami, FL 33178

5.  _____ Folio #30-5002-098-0010 _____

6.  Legal Description: TOWN CENTER ONE CONDO UNIT RU 1 UNDIV 1/172 % INT IN COMMON ELEMENTS OFF

7.  REC 26848-3043

8.  and the following Personal Property: ~~All parking/parking assignments, appliances, and existing furniture and fixtures, equipments and fittings~~

9.  ~~that are attached to the property (including, but not limited to: ceiling covering, floor coverings, air coolers/conditioners, and wiring/phone/electronic systems)~~

10.  (all collectively referred to as the "Property") on the terms and conditions set forth below.

11.  **2. PURCHASE PRICE:**
     Express Title Services Group, Inc.
     10261 SW 72nd Street, Suite C-101
     Miami, Florida 33173
     t. (305) 274-8200, f. (305) 273-3131
     e. closings@expresstitleservices.net
     $ ~~1,000,000.00~~   1,050,000.00

12.  **(a)** Deposit held in escrow by: _____   $ _____
13.  ("Escrow Agent") **(checks are subject to actual and final collection)**

14.  Escrow Agent's address: _____ Phone: _____

15.  **(b)** Additional deposit to be made to Escrow Agent
16.  ☐ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
17.  ☒ within _3_ days after Effective Date _____   $ ~~10,000.00~~   50,000.00

18.  **(c)** Additional deposit to be made to Escrow Agent
19.  ☒ within ____ days (3 days, if left blank) after completion of Due Diligence Period or
20.  ☐ within ____ days after Effective Date   $ ~~15,000.00~~   50,000.00

21.  **(d)** Total financing (see Paragraph 5) _____   $ _____

22.  **(e)** Other _____   $ _____

23.  **(f)** All deposits will be credited to the purchase price at closing.
24.  Balance to close, subject to adjustments and prorations, to be paid   $ ~~975,000.00~~   950,000.00
25.  via wire transfer.

26.  For the purposes of this paragraph, "completion" means the end of the Due Diligence Period or upon delivery of
27.  Buyer's written notice of acceptability.

28.  **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**
29.  and **Buyer** and an executed copy delivered to all parties on or before _____ ~~June 30, 2022~~ July 4th, 2022 _____, this offer
30.  will be withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be
31.  3 days from the date the counter offer is delivered. **The "Effective Date" of this Contract is the date on which the**
32.  **last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer** or
33.  _____. Calendar days will be used when computing time periods, except time periods of 5
34.  days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal
35.  holidays. Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next
36.  business day. **Time is of the essence in this Contract.**

37.  **4. CLOSING DATE AND LOCATION:**
38.  **(a) Closing Date:** This transaction will be closed on _____ * or before July 29, 2022 _____ (Closing Date), unless
39.  specifically extended by other provisions of this Contract. The Closing Date will prevail over all other time periods
40.  including, but not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended

Buyer ( SG ) ( ____ ) and Seller ( ____ ) ( ____ ) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

©2017 Florida Realtors®
Form
Simplicity

41  on Closing Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after
42  the insurance underwriting suspension is lifted.

43  **(b) Location:** Closing will take place in ___Miami-Dade___ County, Florida. (If left blank, closing will take place in the
44  county where the property is located.) Closing may be conducted by mail or electronic means.

45  **5. THIRD PARTY FINANCING:**
46  **BUYER'S OBLIGATION:** On or before __N/A__ days (5 days if left blank) after Effective Date, **Buyer** will apply for third
47  party financing in an amount not to exceed _____% of the purchase price or $_____, with a fixed
48  interest rate not to exceed _____% per year with an initial variable interest rate not to exceed _____%, with points or
49  commitment or loan fees not to exceed _____% of the principal amount, for a term of _____ years, and amortized
50  over _____ years, with additional terms as follows:
51  ___Cash transaction___
52  **Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any
53  lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within ____ days (45 days if left
54  blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and (iii) close
55  the loan. **Buyer** will keep **Seller** and Broker fully informed about loan application status and authorizes the mortgage
56  broker and lender to disclose all such information to **Seller** and Broker. **Buyer** will notify **Seller** immediately upon
57  obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and reasonable
58  diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within ____ days (3 days if left blank)
59  deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.
60  If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time thereafter.
61  Unless this financing contingency has been waived, this Contract shall remain subject to the satisfaction, by closing, of
62  those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes of Paragraph 5 only):** If **Buyer**
63  has used good faith and reasonable diligence but does not obtain Loan Approval by Loan Approval Date and
64  thereafter either party elects to cancel this Contract as set forth above or the lender fails or refuses to close on or
65  before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be returned to **Buyer**, whereupon both
66  parties will be released from all further obligations under this Contract, except for obligations stated herein as surviving
67  the termination of this Contract. If neither party elects to terminate this Contract as set forth above or **Buyer** fails to use
68  good faith or reasonable diligence as set forth above, **Seller** will be entitled to retain the Deposit(s) if the transaction
69  does not close. For purposes of this Contract, "Loan Approval" means a statement by the lender setting forth the terms
70  and conditions upon which the lender is willing to make a particular mortgage loan to a particular buyer. Neither a pre-
71  approval letter nor a prequalification letter shall be deemed a Loan Approval for purposes of this Contract.

72  **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by ☐ statutory warranty
73  deed ☐ special warranty deed ☐ other ___Warranty Deed___, free of liens, easements and
74  encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants,
75  restrictions and public utility easements of record; existing zoning and governmental regulations; and (list any other
76  matters to which title will be subject) ___the current Lease described in Section 23, recorded Condo and title documents___
77  _____
78  provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
79  Property as ___commercial condominium___

80  **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
81  and pay for the title search and closing services. **Seller** will, at (check one) ☐ **Seller's** ☒ **Buyer's** expense and
82  within _____ days after Effective Date or at least __15__ days before Closing Date deliver to **Buyer** (check one)
83  ☒ (i) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be discharged by
84  **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount of the purchase
85  price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the evidence of title and
86  **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after Effective Date. ☐ (ii.) an
87  abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
88  However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed
89  insurer as a base for reissuance of coverage may be used. The prior policy will include copies of all policy
90  exceptions and an update in a format acceptable to **Buyer** from the policy effective date and certified to **Buyer** or

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

DocuSign Envelope ID: 92ED4049-B76D-4556-AB36-BB2DC0215476

91    **Buyer's** closing agent together with copies of all documents recited in the prior policy and in the update. If such
92    an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of title.

93    **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**
94    of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or (2)
95    **Buyer** delivers proper written notice and **Seller** cures the defects within _____ days from receipt of the notice
96    ("Curative Period"). Seller shall use good faith efforts to cure the defects. If the defects are cured within the
97    Curative Period, closing will occur on the latter of 10 days after receipt by Buyer of notice of such curing or the
98    scheduled Closing Date. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect cannot be
99    cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have 10 days
100    from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or accept
101    title subject to existing defects and close the transaction without reduction in purchase price.

102    **(c) Survey:** (check applicable provisions below)
103        ☒ **Seller** will, within ___3___ days from Effective Date, deliver to **Buyer** copies of prior surveys,
104    plans, specifications, and engineering documents, if any, and the following documents relevant to this
105    transaction:
106               Prior Certification of Use, Declaration of Condominium Documents
107    prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
108    transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
109    date this Contract is terminated.
110        ☒ **Buyer** will, at ☒ **Seller's** ☒ **Buyer's** expense and within the time period allowed to deliver and examine
111    title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
112    encroachments on the Property or that the improvements encroach on the lands of another, ☐ **Buyer** will
113    accept the Property with existing encroachments ☒ such encroachments will constitute a title defect to be
114    cured within the Curative Period.

115    **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

116    **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition,
117    ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. **Seller**
118    makes no warranties other than marketability of title. In the event that the condition of the Property has materially
119    changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and receive a
120    refund of any and all deposits paid, plus interest, if applicable, or require Seller to return the Property to the required
121    condition existing as of the end of Due Diligence period, the cost of which is not to exceed $_____ (1.5% of
122    the purchase price, if left blank). By accepting the Property "as is", **Buyer** waives all claims against **Seller** for any
123    defects in the Property. (Check **(a)** or **(b)**)

124        ☐ **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
125    condition.

126        ☒ **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within ___20___ days from Effective Date ("Due
127    Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion. During the
128    term of this Contract, **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which
129    **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering, architectural,
130    environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
131    regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local,
132    state and regional growth management and comprehensive land use plans; availability of permits, government
133    approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground
134    water contamination; and other inspections that **Buyer** deems appropriate. **Buyer** will deliver written notice to
135    **Seller** prior to the expiration of the Due Diligence Period of **Buyer's** determination of whether or not the Property
136    is acceptable. **Buyer's** failure to comply with this notice requirement will constitute acceptance of the Property in
137    its present "as is" condition. **Seller** grants to **Buyer**, its agents, contractors and assigns, the right to enter the
138    Property at any time during the term of this Contract for the purpose of conducting Inspections, upon reasonable
139    notice, at a mutually agreed upon time; provided, however, that **Buyer**, its agents, contractors and assigns enter
140    the Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from
141    losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from
142    liability to any person, arising from the conduct of any and all inspections or any work authorized by **Buyer**. **Buyer**
143    will not engage in any activity that could result in a mechanic's lien being filed against the Property without
144    **Seller's** prior written consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the



Buyer ( _SC_ ) ( ____ ) and Seller ( _SRF_ ) ( ____ ) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

©2017 Florida Realtors®
Form Simplicity

145  Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of the
146  Inspections, and (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a
147  result of the Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that
148  **Buyer's** deposit will be immediately returned to **Buyer** and the Contract terminated.

149  **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the
150  parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
151  to ensure that all Property is on the premises.

152  **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
153  business conducted on the Property in the manner operated prior to Contract and will take no action that would
154  adversely impact the Property after closing, as to tenants, lenders or business, if any. Any changes, such as renting
155  vacant space, that materially affect the Property or **Buyer's** intended use of the Property will be permitted ☒ only with
156  **Buyer's** consent ☐ without **Buyer's** consent.

157  **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
158  the norms where the Property is located.
159  **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
160  closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks,
161  mailboxes, and security systems.

162  **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
163  statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
164  recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
165  prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

166  **(c) Documents: Seller** will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
167  service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
168  service contractor from **Seller** advising each of them of the sale of the Property and, if applicable, the transfer of its
169  contract, and any assignable warranties or guarantees received or held by **Seller** from any manufacturer,
170  contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
171  documents, if applicable; assignments of leases, updated rent roll; tenant and lender estoppels letters (if
172  applicable); tenant subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or
173  **Buyer's** lender; assignments of permits and licenses; corrective instruments; and letters notifying tenants of the
174  change in ownership/rental agent. If any tenant refuses to execute an estoppels letter, **Seller**, if requested by the
175  **Buyer** in writing, will certify that information regarding the tenant's lease is correct. If **Seller** is an entity, **Seller** will
176  deliver a resolution of its governing authority authorizing the sale and delivery of the deed and certification by the
177  appropriate party certifying the resolution and setting forth facts showing the conveyance conforms to the
178  requirements of local law. **Seller** will transfer security deposits to **Buyer**. **Buyer** will provide the closing statement,
179  mortgages and notes, security agreements, and financing statements.

180  **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
181  payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
182  premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
183  amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
184  allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
185  of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

186  **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
187  will be paid by **Seller**. If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
188  pay all installments due and payable on or before the Closing Date, with any installment for any period extending
189  beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
190  Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
191  Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
192  completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
193  estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
194  does not apply to condominium association special assessments.

195  **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
196  **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
197  complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply

Buyer ( ___ ) ( ___ ) and Seller ( ___ ) ( ___ ) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

198 with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or
199 Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the
200 withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the
201 requirement.

202 **10. ESCROW AGENT: Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to receive,
203 deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance with the
204 terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to
205 **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent
206 has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option, (a) hold the escrowed
207 items until the parties mutually agree to its disbursement or until a court of competent jurisdiction or arbitrator
208 determines the rights of the parties or (b) deposit the escrowed items with the clerk of the court having jurisdiction over
209 the matter and file an action in interpleader. Upon notifying the parties of such action, Agent will be released from all
210 liability except for the duty to account for items previously delivered out of escrow. If Agent is a licensed real estate
211 broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent interpleads the escrowed items
212 or is made a party because of acting as Agent hereunder, Agent will recover reasonable attorney's fees and costs
213 incurred, with these amounts to be paid from and out of the escrowed items and charged and awarded as court costs
214 in favor of the prevailing party.

215 **11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged
216 default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-
217 complying party specifying the non-compliance. The non-complying party will have _____ days (5 days if left blank) after
218 delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

219 **12. FORCE MAJEURE: Buyer** or **Seller** shall not be required to perform any obligation under this Contract or be liable
220 to each other for damages so long as performance or non-performance of the obligation, or the availability of services,
221 insurance, or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure.
222 "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual
223 transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the
224 non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will
225 be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this
226 Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than
227 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other
228 and the Deposit shall be refunded to **Buyer**, thereby releasing **Buyer** and **Seller** from all further obligations under this Contract.

229 **13. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is
230 not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit
231 will be returned in accordance with applicable Florida Laws and regulations.

232 **14. DEFAULT:**
233     **(a)** In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make
234 the title marketable after diligent effort, **Buyer** may elect to receive return of Buyer's deposit without thereby
235 waiving any action for damages resulting from Seller's breach and may seek to recover such damages or seek
236 specific performance. If Buyer elects a deposit refund, Seller may be liable to Broker for the full amount of the
237 brokerage fee.
238     **(b)** In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1)
239 retain all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the
240 execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek
241 specific performance. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1)
242 terminate the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without
243 waiving any remedy for **Buyer's** default.

244 **15. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the
245 prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and Broker, will be awarded reasonable
246 attorneys' fees, costs, and expenses.

247 **16. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or
248 electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice,
249 document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker)
250 representing a party will be as effective as if given by or delivered to that party.

Buyer (_*GG*_) (_____) and Seller (_SR_) (_____) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

©2017 Florida Realtors®
Form
Simplicity

DocuSign Envelope ID: 92ED4049-B76D-4556-AB36-BB2DC0215476

**17. DISCLOSURES:**

    **(a) Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

    **(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, shall be paid as set forth in Paragraph 9(e).

    **(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

    **(d) Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

**18. RISK OF LOSS:**

    **(a)** If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller** will credit the deductible, if any and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the **Buyer**.

    **(b)** If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with and assist **Buyer** in collecting any such award.

**19. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable ☒ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement to the **Seller** at least 5 days prior to Closing. The terms **"Buyer, " "Seller"** and "Broker" may be singular or plural. This Contract is binding upon **Buyer, Seller** and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**20. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**21. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

**(a) Seller's Broker:** _____ AMA Realty Group Inc. _____    Andres Barbeito _____ ,
                                                      (Company Name)             (Licensee)

_____ 9045 S Dadeland Blvd., Miami, FL 33156    305-444-9311 _____      305-444-9312 _____ ,
                                      (Address, Telephone, Fax, E-mail)

who ☐ is a single agent ☒ is a transaction broker ☐ has no brokerage relationship and who will be compensated by ☐ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____

**(b) Buyer's Broker:** _____ N/A _____ ,
                                      (Company Name)             (Licensee)

_____ ,
                                        (Address, Telephone, Fax, E-mail)

Buyer (☑️) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-5    Rev 9/17                                                 ©2017 Florida Realtors®
Serial#: 036764-700165-6175205                                                 Form Simplicity

302 who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated by
303 ☐ **Seller's Broker** ☐ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)
304 _____
305 (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
306 inquiries, introductions, consultations, and negotiations resulting in this transaction. **Seller** and **Buyer** agree to
307 indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
308 reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
309 inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
310 Paragraph 10, (3) any duty accepted by Broker at the request of **Seller** or **Buyer**, which is beyond the scope of
311 services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
312 expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of **Seller** or **Buyer**.

313 **22. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
314 this Contract):
315 ☐ (A) Arbitration ☐ (E) Seller Warranty ☐ (I) Existing Mortgage
316 ☐ (B) Section 1031 Exchange ☐ (F) Coastal Construction Control L ☐ (J) Buyer's Attorney Approval
317 ☐ (C) Property Inspection and Repair ☐ (G) Flood Area Hazard Zone ☐ (K) Seller's Attorney Approval
318 ☒ (D) Seller Representations ☐ (H) Seller Financing ☒ Other _Condo Rider_

319 **23. ADDITIONAL TERMS:**
                                    including
320 Contract includes conveyance/assignment of six parking spaces' two assigned parking spots. All office keys, mail-box keys and FOBS, shall be delivered
321 to the Buyer on or before Closing Date.
   Seller will close all open and expire permits and cited or known code violations on or prior to the Closing Date, except as set forth in this Contract
322 Property shall be sold, conveyed, assigned, transferred and delivered by the Seller to the Buyer at the Closing free and clear of any and all liens, mortgages,
   pledges, security interests, real estate and personal property taxes, claims, restrictions, judgments, prior assignments, liabilities, obligations, assessments,
323 charges, encumbrances, clouds, tenancies, licenses, covenants, successor or transferee liabilities and claims of any and all nature and description whatsoever,
   including, without limitation, any of the foregoing arising under, related to or resulting from the Seller's existing contracts, leases, agreements, similar arrangements.
324 If Property is currently leased or occupied by a tenant, copies of lease agreement/documents and verified estoppel letters shall be delivered to Buyer for review
   within 5 days of the Effective Date; Seller shall assign rights, title and interest under the lease/transfer advance rents/deposits upon request of Buyer and prior to
325 Closing Date.

326 _____
327 *Sale is subject to the Tenant's Right of First Offer (section 16.6 of Lease Agreement Tenant shall have thirty (30) days from the
328 receipt of written offer to be the Purchaser of the Leased Premises).
329 The original lease agreement was executed between Auld Realty Corp. (Landlord) and Modern Med Centers, LLC (Tenant).
330 On May 26, 2022, the Lease Agreement was assigned to RxCompoundStore.com and consented by the Auld Realty Corp.
331 _____
332 _____
333 _____
334 _____
335 _____
336 _____
337 _____
338 _____
339 _____
340 _____
341 _____

342 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
343 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL**
344 **FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE**
345 **PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE**
346 **EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR**
347 **REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER**

Buyer (  ) (  ) and Seller ( SR ) (  ) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

CC-5   Rev 9/17                                                                    ©2017 Florida Realtors®
Serial#: 036764-700165-6175205                                                    Form
                                                                                  Simplicity

DocuSign Envelope ID: 92ED4049-B76D-4556-AB36-BB2DC0215476

348 **ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
349 **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER**
350 **REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF**
351 **THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
352 **GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND**
353 **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

354 Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
355 party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
356 terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
357 to do so.

358 _____   Date: 6-26-2022 _____
     (Signature of Buyer)

359 Soraya Ghodrati _____   Tax ID No.: _____
     (Typed or Printed Name of Buyer)

360 Title: _____   Telephone: _____

361 _____   Date: _____
     (Signature of Buyer)

362 _____   Tax ID No.: _____
     (Typed or Printed Name of Buyer)

363 Title: _____   Telephone: _____

364 Buyer's Address for purpose of notice _____

365 Facsimile: _____   Email: _____

366 _____   Date: 7/1/2022 _____
     (Signature of Seller)

367 Steve Frankel _____   Tax ID No.: _____
     (Typed or Printed Name of Seller)

368 Title: Secretary _____   Telephone: _____

369 _____   Date: _____
     (Signature of Seller)

370 _____   Tax ID No.: _____
     (Typed or Printed Name of Seller)

371 Title: _____   Telephone: _____

372 Seller's Address for purpose of notice _____

373 Facsimile: _____   Email: _____

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should
not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the
user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL
ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this
form by any means including facsimile or computerized forms.

Buyer ( SG ) (____) and Seller (____) (  SR F  ) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-5   Rev 9/17                                                                                   ©2017 Florida Realtors®
Serial#: 036764-700166-6175205                                                          Form Simplicity

EXHIBIT "3"

**ESTOPPEL CERTIFICATE**

Tenant: RxCompoundStore.com

Landlord: Auld Realty Corp.

Premises: 8950 SW 74 Ct. #101, Miami, FL 33156

To whom it may concern:

The undersigned is the Tenant of the above Premises and hereby represents, warrant and certifies as follows:

A.  Tenant is leasing the Premises under a lease, a complete and correct copy of which and all amendments and supplements thereto (collectively, the "Lease") is attached to this Estoppel Certificate.

B.  Date of Lease   January 17, 2019

C.  Current Landlord's name   Auld Realty Corp.

D.  Current tenant's name   RxCompoundStore. org.

E.  Current monthly rent $7,056.79; Payment Method; any other monthly payments: N/A
    Rent paid through the period ending: August 30, 2022
    Tenant has not prepaid any future rent, except the amount of $ N/A   for the rental period of _____

F.  Security deposit  $ 12,333.56 ; Other deposits N/A

G.  Expiration date of the current lease   May 31, 2026

H.  Number and location of parking spaces: 2 Assigned 665 & 666 plus 4 unassigned

I.  The landlord pays the following utilities:  None

J.  The tenant pays the following utilities:  All

K.  The tenant represents that the original lease remains in full force and effect and constitutes the entire agreement between the tenant and landlord except for the following modifications and changes:

There are no verbal or written agreements or understanding between the parties with regards to the premises, except as specifically set forth above.

L.  Tenant is the occupant and is in possession of the premises. Tenant has not assigned, transferred, hypothecate its interest in the Lease. Any construction, build-out, improvements, alterations, or additions to the Premises required under the Lease have been fully paid for and completed in accordance with the plans and specifications described in the Lease.

M.  All obligations of the landlord under the lease have been fully performed and landlord is not in default under any terms of the lease. Tenant has no defenses, off-sets or counterclaims to the payment of rent or other amounts due from Tenant to Landlord under the Lease.

N.  Tenant has not been given any free rent, partial rent, rebates, rent abatements, or rent concessions of any kind, except as specified as follows:

O.  Tenant has not filed, is not the subject of any filing for bankruptcy or reorganization under federal bankruptcy laws or similar state laws, and does not contemplate such filing(s).

P.  Tenant represents that tenant is not in default of the performance of any obligations under the lease, has not committed any breach of the Lease, and has not received any notice of default under the Lease, which has not been cured.

Q.  All obligations of the landlord under the lease have been fully performed, any and all renovations, build-out, improvement obligations under the lease have been performed and the landlord is not in default under any terms of the lease. To the best of the knowledge of the tenant, no default exists on the part of the landlord or the tenant and there are no verbal or written agreements with respect to the premises, except as set forth

above.

R.  Tenant and landlord understand and acknowledge that they are executing this estoppel certificate to be relied upon and induce others to rely upon same, in whole or in party, to make any decision relating to the premises, including in entering into an assignment of the lease.

S.  The tenant acknowledges and represents that if the lease provided tenant with a right of first purchase/option to purchase, the landlord complied with the lease provisions and tenant rejected the right/declined to purchase the Leased Premises/exercise Tenant's Right of First Offer.  Tenant confirms and represents that it owns no options to purchase the Premises or rights of first refusal or other rights to acquire any interest in the Premises.

T.  Tenant understands that any purchaser of the Premises/assignee to the Lease will materially rely upon this Estoppel Certificate, and is making same for the benefit, use and protection of any such purchaser of the property/assignee to the Lease, with the understanding that such disclosures and representations are true and correct and intended to be materially be relied upon in purchasing the Premises/entering into an assignment of the Lease.

U.  To the best of Tenant's knowledge, the Premises are owned by Landlord, who holds the entire interest of landlord or lessor under the Lease.

V.  Tenant has caused no lien, claim or encumbrances to attach to the leasehold interest in the Premises, nor is aware of any claim or potential claim(s) against the Premises or the landlord.

Date: 08/15/22

RxCompoundStore.com
Tenant
By: Mario Tabraue
Title: Manager

Foregoing disclosures and representations, verified and confirmed by Seller/ Landlord:

Date: 08/15/22

Auld Realty Corp.
Seller/Landlord
By:
Title: SECRETARY

EXHIBIT "4"

CFN: 20220768079 BOOK 33410 PAGE 282
DATE:10/05/2022  10:03:32 AM
DEED DOC 6,300.00
SURTAX 4,725.00
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**Prepared By and Return To:**
Annabel Fernandez
Express Title Services Group, Inc.
10261 SW 72 Street, Suite C101
Miami, FL 33173

Order No.: 22-16012-1

Property Appraiser's Parcel I.D. (folio) Number:
30-5002-098-0010

## WARRANTY DEED

THIS WARRANTY DEED dated September 29, 2022, by **Auld Realty Corp., a Florida Corporation,** whose post office address is C/O Steven R. Frankel, Esq. Zeisler PLLC, 45 Rockefeller Plaza, 20th Floor, New York, NY 10111   (the "Grantor"), to **Soraya Ghodrati,** whose post office address is P.O Box 5l6005, m.A-i, Fl  33256  (the "Grantee").

(Wherever used herein the terms "Grantor" and "Grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)

WITNESSETH:  That the Grantor, for and in consideration of the sum of Ten And No/100 Dollars ($10.00) and other valuable consideration, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys, and confirms unto the Grantee, all that certain land situated in County of Miami-Dade, State of Florida, viz:

**Retail Unit 1 of Town Center One, a Condominium according to the Declaration of Condominium thereof, recorded in Official Records Book 26848, Page(s) 3043, as Amended in Book 26956, Page 2624, as further amended and any amendments thereto, of the Public Records of Miami-Dade County, Florida, together with its undivided share in the common elements.**

Subject to easements, restrictions, reservations and limitations of record, if any.

TOGETHER with all the tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining

TO HAVE AND TO HOLD the same in Fee Simple forever.

AND the Grantor hereby covenants with said Grantee that the Grantor is lawfully seized of said land in fee simple; that the Grantor has good right and lawful authority to sell and convey said land; that the Grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except taxes accruing subsequent to: December 31,2021.

IN WITNESS WHEREOF, the said Grantor has signed and sealed these presents the day and year first above written.

CFN: 20220768079 BOOK 33410 PAGE 283

Signed, sealed and delivered in presence of:

*Vera Erwich*
Witness Signature

*VERA ERWIGH*
Printed Name of First Witness

_____
Witness Signature

*Zina Genut*
Printed Name of Second Witness

Auld Realty Corp., a Florida Corporation

BY: _____
Steven R. Frankel, Secretary, officer duly
authorized by the board  through a corporate
resolution to execute the deed and
convey the property

**CORPORATE SEAL**

**Grantor Address:**
C/O Steven R. Frankel, Esq.
Zeisler PLLC,
45 Rockefeller Plaza, 20th Floor
New York, NY 10111

STATE OF NEW YORK

COUNTY OF _Westchester_

The foregoing instrument was executed and acknowledged before me by means of ___✓___ Physical
Presence or _____ Online Notarization this _29_ day of _September_____, 2022 by Steven R.
Frankel, Secretary of Auld Realty Corp., a Florida Corporation and duly authorized by the board through a
corporate    resolution.    He    is    personally    known    to    me    or    has    produced
_passport_____ (type of identification) as identification.

_____
Notary Public
Printed Name: _Zina Genut_
Commission # _01GE6413706_
My Commission Expires: _2-1-2025_

ZINA GENUT
Notary Public, State of New York
Reg. No. 01GE6413706
Qualified in Rockland County
Commission Expires 02/01/2025

The undersigned, Lucio Velo, the sole Director and President of Auld Realty Corp. (the "Corporation"), a Florida corporation, hereby Certifies and Resolves as follows:

WHEREAS, Auldcastle Investments Corp. ("Auldcastle") a corporation formed in the British Virgin Islands, and is the sole stockholder of the Corporation; and

WHEREAS, Antonello Bardelli is the President of Auldcastle; and

WHEREAS, Lucio Velo is the sole Director and President of the Corporation; and

WHEREAS. The corporation is the record title holder of a certain Commercial Condominium Unit with an address at 8950 SW 74th Court, Miami, Dade County, Florida 33156 and known as #101 or Suite RU 1 (the "Unit"); and

WHEREAS, The Corporation has entered into a Contract of Sale dated July 1, 2022 to sell the Unit to Soraya Ghodrati (the "Contract"); and

WHEREAS, Antonello Bardelli is signing this Resolution to evidence the approval by Auldcastle to the Contract and sale of the Unit;

NOW THEREFOR, the undersigned hereby Certifies and Resolves that

1. Each of the foregoing WHEREAS clauses is incorporated into this Resolution;
2. The Contract is hereby ratified and approved by the Corporation;
3. The President and Steven Frankel, the Secretary of the Corporation are hereby authorized, each acting alone, to execute and deliver any and all documents or instruments necessary or required to complete and close the sale and transfer of the Unit without any further consent or authorization.
4. Auldcastle consents to and approves the sale of the Unit.

IN WITNESS WHEREOF, the Undersigned have executed and delivered this consent, Certification and Resolution as of the 5th day of September, 2022

Lucio Velo

Antonello Bardelli

The undersigned, as Secretary, certifies that the forgoing is in full force and effect and has not been modified or amended

Steven R Frankel   September, 2022

The undersigned, Nicola Gianoli, as the sole director of Auldcastle Investments Corp. (the "Corporation"), a British Virgin Islands corporation, hereby Certifies and Resolves as follows:

WHEREAS, the Corporation is the sole shareholder of Auld Realty Corp. ("Auld") a Florida corporation; and

WHEREAS, Nicola Gianoli is the sole director of the Corporation; and

WHEREAS, Antonello Bardelli is the President and only officer of the Corporation; and

WHEREAS, Auld entered into a Contract of Sale dated July 1, 2022 with Soraya Ghodrati to sell the real property owned by Auld located in Miami, Florida (the "Contract")

NOW THEREFOR, the undersigned hereby Certifies and Resolves that

1. Each of the foregoing WHEREAS clauses are incorporated into this Resolution;
2. The Corporation hereby ratifies and approves the Contract;
3. Antonello Bardelli is the President of the Corporation, his signature as set forth below is an authentic signature and as of the date of this Resolution holds the office of President:

| NAME | SIGNATURE | TITLE |
|------|-----------|-------|
| Antonello Bardelli | | President |

IN WITNESS WHEREOF, the Undersigned has executed and delivered this consent, Certification and Resolution as of the the 5th day of September, 2022

Nicola Gianoli

CFN: 20220768079 BOOK 33410 PAGE 286



CORPORATE SERVICES

CERTIFICATE OF INCUMBENCY

**Auldcastle Investments Corp.**
**(BVI Company No. 1907356)**
**(the "Company")**

We, **ARIAS, FABREGA & FABREGA TRUST CO. BVI LIMITED**, of Wickham's Cay, Road Town, Tortola, British Virgin Islands, HEREBY CERTIFY

1.  THAT we are the Registered Agent of **Auldcastle Investments Corp.**, a Company duly incorporated on the 1st day of March, 2016 and in Good Standing under the British Virgin Islands Business Companies Act, 2004, of the laws of the British Virgin Islands.

2.  THAT the Registered Office of the Company is at:

    Level 1, Palm Grove House, Wickham's Cay 1,
    Road Town Tortola, British Virgin Islands

3.  THAT according to the records kept at the Registered Office of the company, the following persons hold the positions as set forth their respective names:

| Name | Office |
|---|---|
| Nicola Gianoli | Director |
| Antonello Bardelli | President |

We issue this certification relying solely upon documents that have been delivered to us by the director(s), officer(s) and member(s) of the above company to be kept by us as Registered Agents of the company at the company's Registered Office in the B.V.I. We have assumed that such documents are true and accurate and have assumed that all signatures and seals contained in such documents are genuine and correspond to the signatures and seals of the persons that purport to be signing or sealing the said documents.

**IN WITNESS WHEREOF,** the undersigned has executed this Certificate this 15th day of September, 2022.

.................................. *Alejandra Tapia* ..................................
Arias, Fabrega & Fabrega Trust Co. BVI Limited
Alejandra Tapia – Authorized Signatory

CFN# 20220768079 BOOK 33410 PAGE 287

### TERRITORY OF THE BRITISH VIRGIN ISLANDS
### BVI BUSINESS COMPANIES ACT, 2004



### CERTIFICATE OF GOOD STANDING
### (SECTION 235)

The REGISTRAR OF CORPORATE AFFAIRS, of the British Virgin Islands HEREBY CERTIFIES that, pursuant to the BVI Business Companies Act, 2004 at the date of this certificate, the company,

**Auldcastle Investments Corp.**

BVI COMPANY NUMBER: **1907356**

1. Is on the Register of Companies;

2. Has paid all fees and penalties due under the Act;

3. Has filed its register of directors with the Registrar which is complete;

4. Has not filed articles of merger or consolidation that have not become effective;

5. Has not filed articles of arrangement that have not yet become effective;

6. Is not in voluntary liquidation;

7. Is not in liquidation under the Insolvency Act, 2003;

8. Is not in receivership under the Insolvency Act, 2003;

9. Is not in administrative receivership; and

10. Proceedings to strike the name of the company off the Register of Companies have not been instituted.



**REGISTRAR OF CORPORATE AFFAIRS**

31st day of August, 2022

EXHIBIT "5"

Prepared by and Return to:
Sina Negahbani, Esq.
Law Offices of Sina Negahbani
P.O. Box 566055
Miami, Florida 33256
(305) 595-9078

## ASSIGNMENT OF RIGHTS TO USE PARKING SPACES

For good and valuable consideration, the adequacy and receipt of which is hereby mutually acknowledged, Auld Realty Corp., a Florida corporation ("Assignor"), hereby assigns to Soraya Ghodrati ("Assignee"), the purchaser from Assignor of Retail Unit 101 (the "Unit") of Town Center One, a Condominium according to the Declaration of Condominium thereof, recorded in Official Records Book 26848, Page(s) 3043, and any amendments thereto, of the Public Records of Miami-Dade County, Florida, together with its undivided share in the common elements, all of Assignor's exclusive rights to use Parking Spaces Nos. 665 and 666 and non-exclusive right to use seven (7) unassigned parking spaces, resulting in a total of nine (9) parking spaces, located within the Common Elements of the Condominium, as defined by the Declaration of the Condominium, as Limited Common Elements appurtenant to the Unit. This Assignment of the parking spaces has been made in connection with and as part of the purchase by Assignee of the Unit from the Assignor.

IN WITNESS WHEREOF, the Assignor has hereunto set Assignor's hand and seal this 15th day of September, 2023.

AULD REALTY CORP.
A Florida corporation

CORPORATE SEAL

By: _____
Steven R. Frankel
Corporate Secretary

STATE OF NEW YORK        )
COUNTY OF WESTCHESTER    )

The foregoing instrument was acknowledged before me by means of ✓ physical presence or ___ online notarization, this $15$ of September, 2023 by Steven R. Frankel, Secretary of Auld Realty Corp., a Florida corporation, who is personally known to me or who has produced a valid _____ Driver license _____ as identification.

_____
Notary Public
Printed Name: Patrice Portanova
My Commission Expires: 5/14/27
Notary Seal:

PATRICE PORTANOVA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01P05166025
Qualified in WESTCHESTER County
Commission Expires MAY 14, 2027

EXHIBIT "6"

**RE: Ghodrati v. Auld Realty Corp., et al.**                                    Yahoo Mail/Inbox



**Steve Frankel** <steve@zeisler-law.com>                                          Apr 29 at 10:50 AM
To: negahbanis@yahoo.com <negahbanis@yahoo.com>

Sorry for the delay in responding to you.  I have ben traveling and did not always have internet service. I am unable to respond any further since neither I or my firm represent Auld Realty any further and I do not have any new contact information.

**From:** SN <negahbanis@yahoo.com>
**Sent:** Friday, April 12, 2024 1:22 PM
**To:** Steve Frankel <steve@zeisler-law.com>
**Subject:** Ghodrati v. Auld Realty Corp., et al.

Good afternoon Mr. Frankel. Several additional months that have now passed since the buyer first advised you of the seller's breach of the agreement arising from the failure to convey the contractually agreed parking.  In fact we have not heard anything from you for sometimes now.  Despite the courtesy of providing you with such substantial  additional amount of time to cure/remedy the breach, unfortunately nothing was done.   Additionally, you have indicated that the Seller had no assignment of parking rights document from the entity whom you purchased the unit from so as to have made the promises/representations regarding the conveyance of the referenced parking spaces.   In light of the continued complete failure of the Seller/you to have cured the breach, my client (who continues to incur significant losses/damages) has directed me to formally proceed on the matter.

Regards,

Sina Negahbani, Esq.
Law Offices of Sina Negahbani
Mailing Address:
P.O. Box 566055
Miami, Florida 33256
Phone: 305.595.9078
Fax: 305.595.9079

This transmission is intended to be delivered only to the named addressee(s) and may contain information that is confidential, proprietary, attorney work-product or attorney-client privileged. If this information is received by anyone other than the named addressee(s), the recipient should immediately notify the sender by E-MAIL and by telephone [305-595-9078] and obtain instructions as to the disposal of the transmitted material. In no event shall this material be read, used, copied, reproduced, stored or retained by anyone other than the named addressee(s), except with the express consent of the sender or the named addressee(s). NOTICE: THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE COLLECT AND DELETE THE MATERIAL FROM ANY COMPUTER.
THANK YOU.

EXHIBIT "7"

**FILED**
**Jan 29, 2024**
**Secretary of State**

# ARTICLES OF DISSOLUTION

Pursuant to section 607.1403, Florida Statutes, this Florida corporation submits the following Articles of Dissolution:

FIRST:       The name of the corporation as currently filed with the Florida Department of State:

AULD REALTY CORP

SECOND:   The document number of the corporation: P16000052163

THIRD:      The date dissolution was authorized: December 21, 2023

Effective date of dissolution: January 31, 2024

FOURTH:    Dissolution was approved by the shareholders in the manner required by this chapter and by Articles of Incorporation.

I submit this document and affirm that the facts stated herein are true.  I am aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in section 817.155, Florida Statutes.

Signature:  STEVEN FRANKEL                    SECRETARY

Electronic Signature of Signing Officer, Director, Incorporator or Authorized Representative